Parrish W. LUSBY, Plaintiff,

v.

The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a Delaware Corporation, Defendant.

No. A3–00–47.

United States District Court,
D. North Dakota,
Southeastern Division.

Aug. 21, 2000.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

## I INTRODUCTION

Before the court is defendant's motion to dismiss. Plaintiff opposes the motion.

## II BACKGROUND

On September 23, 1998, the plaintiff, Parish Lusby, was injured while working for the defendant, Burlington Northern and Santa Fe Railway Company ("BNSF"). On October 26, 1998, he entered into a "Release and Settlement Agreement" through which, in return for $100,000 dollars, he essentially released BNSF and those affiliated with it from "all claims and liabilities of every kind or nature," including but not limited to those arising from the accident. However, on April 7, 2000, Lusby filed a complaint against BNSF under the Federal Employers' Liability Act ("FELA"), alleging that BNSF negligently caused the September 23, 1998 accident and his resulting injuries.

On June 7, 2000, BNSF moved pursuant to Fed.Rule.Civ.P. 12(b)(6) to dismiss the complaint on the grounds that it failed to state a claim upon which relief can be granted. Its accompanying brief argues that Lusby released BNSF from liability when it executed the "Release and Settle-

ment Agreement" and has never rescinded the agreement. Further, BNSF argues that Lusby has never offered to tender back the $100,000 dollars he received under the release, which it asserts is a prerequisite to rescinding the release. Lusby's responsive brief (doc. # 7) asserts that the release was induced by fraud, which provides a basis for its recission. In response to BNSF's argument, Lusby contends that tender back is not required when the plaintiff attacks a FELA release as obtained by fraud; rather, the money obtained thereunder should be "a credit against any recovery obtained by Plaintiff in his suit for his injuries." (Pl.'s Br. in Opp'n to Def.'s Mot to Dismiss at 4.)

## III ANALYSIS

### A. Motion to Dismiss Standard

In reviewing a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "is constrained by a stringent standard." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir. 1997) (citations omitted). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 546 (citations omitted). *See Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir.1999). Moreover, the Court must accept the allegations in the complaint as true and construe them in plaintiff's favor when making this determination. *Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir.1999). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Parnes*, 122 F.3d at 546. *See Duffy v.*

*Landberg,* 133 F.3d 1120, 1122 (8th Cir. 1998).

## B. The Motion to Dismiss

 The interpretation and validity of a release in a FELA action is governed by federal law. *Dice v. Akron, Canton & Youngstown R. Co.,* 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398 (1952). The Supreme Court has recognized that, if proved, fraud is a sufficient basis to invalidate a release in a FELA action. *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948) (recognizing "showing that the contract [one] has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake" as a basis for recission of a release). For purposes of this motion, the Court must accept the plaintiff's allegations as true. *See Midwestern Mach., Inc.,* 167 F.3d at 441. Thus, only for the purposes of this Rule 12(b)(6) motion, the Court assumes the October 23, 1998 release was obtained by fraud sufficient to invalidate it. (Lusby Aff. ¶ 6, 7.) Thus, the sole question before the Court is whether plaintiff is prevented from pursuing this claim as a matter of law because he has failed to tender back the consideration received pursuant to the release he now wishes to rescind. For the reasons discussed below, the Court rejects this contention and denies defendant's motion to dismiss.

Analysis of this question begins with Section 5 of FELA. This section provides in part: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void...." 45 U.S.C. § 55. The Supreme Court has interpreted this section not to bar releases of FELA claims, holding that releases are not a means of exempting a railroad from liability but of resolving a claimed liability. *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630–31, 68 S.Ct. 296, 92 L.Ed. 242 (1948). However, as the parties point out, a division developed over whether FELA plaintiffs were required to tender back money received under releases before rejecting them and filing suit.

One line of cases—cited here by plaintiff—held that a FELA plaintiff is not required to tender back money received under a release when he claims the release was obtained by fraud, since, "a bona fide compromise and settlement was not made, because the plaintiff's agreement was obtained by fraud." *See Irish v. Central Vermont Railway,* 164 F.2d 837, 840 (2d Cir.1947); *see also Marshall v. New York Cent. R. Co.,* 218 F.2d 900 (7th Cir.1955). Under these cases, therefore, a plaintiff can retain money received under a release during his or her suit, but the money is credited against any recovery. *See Irish,* 164 F.2d at 840.

Another line of cases—cited here by defendant—took a contrary position, holding that not requiring tender back based solely on an allegation of fraud "compels the court, upon the bare allegation of fraud by plaintiff, to ignore the denial of fraud by the carrier and to assume such fraud in the release as will constitute it a device by the carrier to exempt itself from liability." *Collett v. Louisville & N.R. Co.,* 81 F.Supp. 428, 431–32 (E.D.Ill.1948); *see also Overstreet v. Atlantic Coast Line,* 152 So.2d 188 (Fla.App.1963) (applying federal law). These cases rely on the Supreme Court decision in *Callen,* which put the burden of proving that a FELA release was obtained fraudulently on the one challenging it, describing them as "stand[ing] on the same basis as the releases of others." 332 U.S. at 630–31, 68 S.Ct. 296. According to this line, requiring FELA releases to be treated like any other con-

tract means the general rule requiring tender back of benefits applies as well. *Collett*, 81 F.Supp. at 431–32.

By their briefs, the parties would have the Court decide between these two lines of cases. In the Court's view, however, the question was resolved by the Supreme Court in *Hogue v. Southern R. Co.*, in which it squarely held that tender back is not required when the plaintiff pleads that the release was executed under a mutual mistake of fact. *Hogue v. Southern R. Co.*, 390 U.S. 516, 517, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968) (per curiam). In so doing, the Court wrote, "We reject the suggestion that a tender back ... is excused *only* where fraud enters into the execution of the release." *Id.* (emphasis supplied). Rather, the Court held "that a tender back is *also not* requisite" in cases of mutual mistake. *Id.* (emphasis supplied). This language makes clear that the Court viewed a tender back as unnecessary for fraud claims and viewed itself as extending this rule to cases of mutual mistake. *Id.* Thus, the Court finds that the Supreme Court has already foreclosed this issue and held that tender back is not required. *Id.*

BNSF has argued that the *Hogue* case stands for a more limited proposition. It seizes on the fact that the Supreme Court wrote that tender back was excused where "fraud enters into the execution of the release." *Id.* It points out that the phrase "fraud in the execution" is a term of art, synonymous with "fraud in factum," which refers to the fraud which exists "where a party induces another to sign a release based upon a misinterpretation as to its true nature and contents." (Def.'s Reply Brief in Supp. of Mot. to Dismiss at 4 (citing Restatement (Second) of Contracts § 163).) BNSF points out that Lusby has not alleged fraud in the execution, but rather fraud in the inducement, which "consists of representations made to induce a party to execute a release." (Def.'s Reply Brief in Supp. of Mot. to Dismiss at 4 (citing Restatement (Second) of Contracts § 164).) According to its interpretation, by using the word "execution," the Supreme Court did not hold that tender back was required for fraud in the inducement claims such as Lusby's but rather limited its holding to claims of fraud in factum.

The Court rejects this argument. To support its explanation that tender back was not required, the Supreme Court cited *Graham v. Atchison*. *Hogue*, 390 U.S. at 517, 88 S.Ct. 1150 (citing *Graham v. Atchison, T. & S.F. Ry. Co.*, 176 F.2d 819, 826 (9th Cir.1949)). While the court in *Graham* did not reach the question of whether a FELA plaintiff generally is required to tender back, it is noteworthy that the claim in that case did not involve a claim for fraud in the execution. *Graham*, 176 F.2d at 825–26. Rather, the plaintiff sought to prove either mutual mistake or fraud in the inducement. *Id.* Further, the specific passage from *Graham* cited by the *Hogue* Court was merely the general rule that fraud in the execution excuses tender back, while other claims do not; it is not a holding in any way tailored to the FELA context. *Hogue*, 390 U.S. at 517, 88 S.Ct. 1150 (citing *Graham*, 176 F.2d at 826 (referring to the Restatement of Restitution § 65 for the general requirement of a tender back)). In short, then, the *Hogue* Court's use of the phrase "execution of the release" does not have the meaning BNSF ascribes to it.

More important, however, is the fact that the Supreme Court's holding in *Hogue* is more expansive than BNSF suggests. *See generally Hogue*, 390 U.S. at 517, 88 S.Ct. 1150. In holding that a claim of mutual mistake excuses the tender back requirement, the Court wrote more gener-

ally that "a rule which required a refund as a prerequisite to institution of suit would be 'wholly incongruous with the general policy of [FELA] to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers.'" *Id.* (citing *Dice,* 342 U.S. at 362, 72 S.Ct. 312). Instead, the Court found it "more consistent with the objectives of the Act" to hold that money received under a release is a credit against future recovery. *Id.* This broad language indicates clearly that the Court did not intend to make its holding depend upon whether the fraud at issue was "in the inducement" or "in the execution;" rather, the Court articulated a broad rule excusing FELA plaintiffs from the general tender back requirement when they allege a defect in a release. *Id.*

Further, a series of cases in other contexts have interpreted *Hogue* as a rejection of the general tender back requirement in the context of federal remedial statutes. *See Forbus v. Sears Roebuck & Co.,* 958 F.2d 1036, 1040–41 (11th Cir.1992) (collecting cases applying the reasoning of *Hogue* to actions under the Age Discrimination in Employment Act, the Jones Act, and the Automobile Dealers' Day in Court Act). This trend has been most powerful in the context of the Older Workers Benefit Protection Act (OWBPA). The Seventh Circuit, in rejecting a tender back requirement in an OWBPA case, cited *Hogue* for the premise that general state law rules of recission did not apply to FELA actions, and by extension to other statutory actions. *Oberg v. Allied Van Lines,* 11 F.3d 679, 684 (7th Cir.1993). The Sixth Circuit took a similar position in *Raczak v. Ameritech Corp.,* 103 F.3d 1257, 1265–66 (6th Cir.1997).

Also highly instructive is the fact that the Supreme Court itself recently rejected the tender back requirement for OWBPA waiver cases, holding that retaining monies paid under a nonconforming release is not a bar to suit under OWBPA. *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). In so doing, it emphasized, as it did in *Hogue,* the fact that the claim arose within the context of a statute enacted by Congress to protect a certain class of workers. *Id.* at 426–27, 118 S.Ct. 838. This holding and analysis suggest that the interpretations of *Hogue,* to mean that tender back rules do not apply to federal remedial statutes, are correct. *See Forbus,* 958 F.2d at 1040–41.

## IV CONCLUSION

Therefore, **IT IS ORDERED** that defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**