Foretich v. The Landsburg Co.          CV-95-569-SD  04/29/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


<u>Eric A. Foretich</u>


        v.                                    Civil No. 95-569-SD


<u>The Landsburg Company;</u>
<u>Victor Paddock; Alan Landsburg;</u>
<u>Linda Otto; Robert Trebilcock;</u>
<u>Kay Hoffman; Lucretia Baxter;</u>
<u>Lexie Longstreet; Ian Goldman;</u>
<u>American Broadcasting Companies, Inc.;</u>
<u>Capital Cities/ABC, Inc.;</u>
<u>ABC Holding Co., Inc.</u>


<u>O R D E R</u>


    This civil action brought by Eric Foretich concerns a

television docudrama entitled "A Mother's Right: The Elizabeth

Morgan Story," broadcast by the American Broadcasting Companies,

Inc. (ABC).  The amended complaint alleges defamation, fraud,

invasion of privacy, tortious interference with business

relationships, and negligence.

    Presently before the court for its review are the following

motions:  (1) the Landsburg defendants'[1] motion to stay the

_____

        [1]The Landsburg defendants are herein defined to include
defendants The Landsburg Company, Alan Landsburg, Linda Otto, and
Victor Paddock.  At times, these defendants may be referenced
separately.

action until after resolution of a related defamation case brought by plaintiff in the United States District Court for the District of Columbia; (2) defendant Robert Trebilcock's motion to stay; (3) Trebilcock's motion to dismiss Count II of plaintiff's amended complaint; and (4) the ABC defendants'[2] motion to stay. Plaintiff has filed objections to the Landsburg defendants' motion, as well as to both motions filed by Trebilcock. However, plaintiff does not object to the motion to stay filed by the ABC defendants.[3]

## Background

On November 29, 1992, the docudrama "A Mother's Right: The Elizabeth Morgan Story" (produced by The Landsburg Company) was broadcast on television as the ABC Sunday Night Movie. The show

---

[2]The ABC defendants are herein defined to include ABC, Capital Cities/ABC, Inc., and the ABC Holding Company, Inc.

[3]In its response to the ABC defendants' motion to stay, plaintiff states, without documentation, that the ABC defendants did not seek the concurrence of plaintiff in accordance with Local Rule 7.1(c). Defendants have filed a special submission in which they state they did, in fact, seek plaintiff's concurrence; appended thereto is a letter that defendants contend proves their point. While compliance with the local rules should be encouraged at every turn, the court finds that it is not necessary to resolve this particular dispute at this time. However, the court assures the defendants that it has considered the ABC defendants' motion to stay insofar as it raises arguments, legal or factual, relating to the motions submitted by the other defendants and has treated said motion as a species of reply memorandum, as they request.

allegedly, among other things, falsely depicted plaintiff as having sexually abused his minor daughter.

One year following the airing of the program, plaintiff filed two defamation actions in state courts in Virginia and the District of Columbia, both of which were subsequently consolidated in the United States District Court for the District of Columbia.[4] The defendants included the ABC defendants, the Landsburg defendants, and "Jane Doe and John Doe (1-100)," defined in the complaint as, inter alia, producers, sponsors, directors, and/or agents or employees of the named defendants.[5]

The District of Columbia federal court later dismissed the Landsburg Company and its named employees on the grounds that they were not subject to personal jurisdiction in the District of Columbia or in Virginia. The ABC defendants apparently remained as the only defendants in the case.

On November 24, 1995, plaintiff filed the instant action against the Landsburg Defendants and the ABC defendants, arising

---

[4]The court relies entirely upon the representations of the parties concerning the nature of the proceedings in Virginia and the District of Columbia.

[5]Such defendants were named in the state court action filed in the District of Columbia. As the parties give no indication that the defendants changed when the case was consolidated in the United States District Court for the District of Columbia, the court will assume for purposes of this opinion that the defendants remained the same.

3

from the same events that are the subject of the District of Columbia litigation. Also sued is Robert Trebilcock, a writer and consultant for the docudrama and a resident of New Hampshire.[6] Shortly thereafter, plaintiff filed a motion (currently pending) in the District of Columbia action to transfer the entire case from the District of Columbia to this court. As defendants are quick to emphasize, such motion arrived on the date that ABC's summary judgment motion was due, some two years after the commencement of the litigation.

## Discussion

### 1. The Motions to Stay

A federal district court's ability to stay a case pending the outcome of a related action in another tribunal is conferred by the court's intrinsic power to manage its docket in an efficient and sensible manner. Landis v. North American Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Hewlett-

---

[6]Defendants contend, and plaintiff does not dispute, that plaintiff could have joined Trebilcock in the original action in either the District of Columbia or Virginia, as Trebilcock would have been subject to personal jurisdiction in both places.

4

Packard Co., Inc. v. Berg, 61 F.3d 101, 105 (1st Cir. 1995). A decision to stay involves considerable discretion and may require the court to take into account the competing interests at play. Austin v. UNARCO Indus., Inc., 705 F.2d 1, 5 (1st Cir.) (proceedings may be stayed in interest of judicial economy and fairness to parties), cert. denied, 463 U.S. 1247 (1983); Taunton Gardens Co. v. Hills, 557 F.2d 877, 879 (1st Cir. 1977) (discussing necessity of stay where case raised issue of "public moment"). See also Acton Corp. v. Borden, Inc., 670 F.2d 377, 380 (1st Cir. 1982) (describing stay decision as being "highly discretionary"). Nonetheless, a stay is not a form of relief that should be granted with over-generosity: a party seeking a stay that would damage another's interests must show that hardship or unfairness would set in if the case went forward. Landis, supra, 299 U.S. at 255. Nor should a stay's terms be unduly oppressive; rather, the duration of the stay should be sharply limned whenever possible. Id. at 257.

To determine the appropriateness of imposing a stay here, the court need not travel much further than the very titles of the parties' respective motions and objections presently interposed. As discussed earlier, although objecting to the imposition of a general stay of the case, plaintiff does not object to the court's stay of the action with respect to the ABC

5

defendants; in addition, plaintiff has filed a motion to transfer in the United States District Court for the District of Columbia. Accordingly, the court could envision a scenario whereby the case went forward with the present defendants, excepting the ABC defendants, only to have the ABC defendants transferred here at some later date.[7] While a grant of a partial stay is not unprecedented, the piecemeal litigation likely resulting from such course can easily be avoided by staying the entire case at least until resolution of the motion to transfer.

The slightly more difficult question concerns whether to stay the case in the event that the District of Columbia court decides against transferring the action to this jurisdiction. As to the ABC defendants, the issue is easily resolved because plaintiff agrees this case against them should be stayed until

---

[7]The court will not attempt to predict how the District of Columbia court will rule on the transfer question, but the court will venture to state that the possibility of transfer is more than hypothetical. When identical actions have been filed concurrently in two federal courts, ordinarily the first-filed action is preferred in a choice-of-venue decision. See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). However, if all of the parties, including the Landsburg defendants, can be consolidated in one proceeding, the District of Columbia court may well rule that a transfer to New Hampshire is appropriate. See, e.g., id. (the possibility of consolidation can influence the district court in deciding whether a civil action should be transferred). Of course, it is also possible that the District of Columbia court will, in its discretion, consider other factors, such as the potential for prejudice or delay, to be more persuasive and rule against a transfer.

the District of Columbia action is resolved.  The remaining defendants posit arguments supporting two possible end-points for the stay with respect to them: (1) until resolution of the pending summary judgment motions in the District of Columbia court; and (2) until resolution of the entire case in that court.[8]

A stay is appropriate when the resolution of a related suit in another tribunal would "'narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved.'"  Taunton Gardens, supra, 557 F.2d at 879 (quoting Landis, supra, 299 U.S. at 253-54).  Defendants contend that the pending motions for summary judgment in the District of Columbia court filed by the ABC defendants are of sufficient character to narrow the issues in the instant case.  Specifically, in the related case, the ABC defendants have sought partial summary judgment on the ground that plaintiff is a limited-purpose public figure with respect to the subject depicted in the docudrama. The ABC defendants have also moved for full summary judgment on the ground that plaintiff cannot show that the alleged defamatory statements were published with actual malice, as well as on the ground that the statements sued upon are privileged because they

---

[8]Defendants appear to prefer that the stay continue through the final resolution of the District of Columbia action.

7

are "a fair report of a judicial proceeding."  See Defendant Robert Trebilcock's Memorandum in Support of Motion to Stay at 2. The court agrees with defendants that a ruling by the District of Columbia court on such motions would have a significant impact on the issues of this case and may serve to narrow the questions that this court ultimately may have to decide, as defendants are likely to file substantially similar motions for summary judgment in the instant case.

Moreover, the court finds plaintiff's arguments in this regard to be lacking in merit.  For example, in arguing that the interest of judicial economy would not be served by a stay, plaintiff envisions that defendants would file duplicate versions of their motions for summary judgment in this court, leaving the issues to be resolved by whichever court first makes a ruling. Such procedure, however, could easily result in wasted judicial efforts (as it is possible that both courts will tackle the motions at or about the same time)--not to mention an unnecesary tax on the defendants.  Similarly unpersuasive is plaintiff's contention that he will suffer prejudice because during the time the issues are resolved by the District of Columbia court "witnesses could die, evidence could be lost and witnesses' memories can fade."  Plaintiff's Memorandum at 8.  The motions for summary judgment have been pending in the District of

Columbia court for over 14 months and have yet to be filed in this court. Accordingly, a stay pending resolution in the District of Columbia court will likely result in a more speedy disposition of the matter than would the alternative approach of having the parties refile their submissions in this court and then take their place at the end of the line in this court's docket.

Although defendants are persuasive in arguing that the stay should continue until resolution of the pending summary judgment motions, the court disagrees with defendants that the stay should continue through to the final resolution of the case in the District of Columbia court. Plaintiff's arguments about the potential for prejudice take on greater resonance the longer the duration of the stay. As a stay pending the final resolution of a case would likely be of lengthy duration, it is more probable that plaintiff would be prejudiced, especially as plaintiff's "key" witnesses, his parents, are of advanced age.[9]

Moreover, resolution of the case against the ABC defendants

---

[9]Defendants respond by noting that plaintiff and/or his parents have litigated at least five defamation actions since the occasion of the events underlying this suit (which occurred primarily from 1982-1987) and that their testimony has been well preserved. Nonetheless, it cannot be gainsaid that the specter of the deaths of witnesses would involve some degree of prejudice, given the resulting impact on plaintiff's ability to call his parents as live witnesses.

in the District of Columbia will not necessarily have res judicata or issue preclusive effect on the case against the remaining defendants in New Hampshire. As plaintiff cogently argues, a determination of the ABC defendants' liability will not necessarily bear on the liability of the remaining defendants, whose negligent or malicious conduct may require a separate inquiry.

Defendants argue that a stay is justified because under the single publication rule, which is followed in New Hampshire, see Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 9-11, 549 A.2d 1187, 1189-90 (1988) (adopting single publication rule set forth in RESTATEMENT (SECOND) OF TORTS), a judgment in plaintiff's favor in the District of Columbia court would preclude further recovery against the remaining defendants. The rule provides that all issues and damage claims arising from a libel should be resolved in a unitary proceeding, thereby reducing the expenditure of judicial resources and protecting defendants from being harassed by multiple lawsuits.[10] See Keeton v. Hustler Magazine, Inc.,

_____

[10]Under the single publication rule,

> (3) Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.
> (4) As to any single publication,
>   (a) ony one action for damages can be maintained,
>   (b) all damages suffered in all

10

465 U.S. 770, 777 (1984) (citing RESTATEMENT (SECOND) OF TORTS, supra note 10, § 577A, cmt. f). However, despite the rule's stark terms, the court is persuaded that the rule is not meant to apply to the instant situation, where a unitary proceeding is made impossible by a ruling that the original forum lacked personal jurisdiction over some of the defendants. Again, the primary purpose of the single publication rule is to provide a plaintiff with a remedy against a single defendant for the aggregate of the publication, so that such defendant is protected from the harassment of repeated actions. Such purpose does not apply to the instant situation, where plaintiff has sued, for the most part, different defendants in different forums, each of whom would not be subject to duplicative litigation.

The court's conclusion is bolstered upon careful review of the single publication rule contained in the RESTATEMENT. Although the RESTATEMENT provides that as to any single publication only one action for damages can be maintained, it also states, "a judgment for or against the plaintiff upon the merits

_____

> jurisdictions can be recovered in the one action; and
> (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

RESTATEMENT (SECOND) OF TORTS § 577A (1977).

of any action for damages bars any other action for damages between <u>the same parties</u> in all jurisdictions." RESTATEMENT (SECOND) OF TORTS, <u>supra</u> § 577A(4)(c) (emphasis added). Furthermore, the comments to the RESTATEMENT provide in relevant part,

> *f.*  Since there is only one cause of action, it follows that a judgment for or against the plaintiff on the substantive merits of the action will bar any subsequent action by the <u>same plaintiff</u> against the <u>same defendant</u> founded upon the same aggregate publication.  This is true even though the publication crosses state lines.  <u>Again the purpose of the rule is to protect defendants from harassment by repeated actions in separate states, when a single action in any one of the states affords the plaintiff his day in court.</u>

<u>Id.</u> § 577A(4), cmt f (emphasis added); <u>see also</u> <u>id.</u> § 577A, cmts b and c.  It follows that where, as here, plaintiff is not suing the same parties as he sued in the District of Columbia action--and all the defendants could not have been joined in said action--the present suit likely is not barred by the single publication rule.[11]

_____

[11]This is not to say that the damages available to plaintiff may not be affected by the single publication rule, or for that matter the principles of joint and several liability.  Indeed, should plaintiff ultimately recover a financial judgment from the ABC defendants in the District of Columbia, such recovery may impact the calculation of damages that plaintiff is eligible to receive from the remaining defendants.  Such issue is not properly before the court at this time, although the court will be amenable to addressing the question should it be raised at some later date.
    The court further observes that should a judgment enter in the District of Columbia action in plaintiff's favor, <u>or even against plaintiff's favor</u>, the single publication rule would bar

Accordingly, the court finds and hereby rules that the stay should continue with respect to the Landsburg defendants and Trebilcock only until the District of Columbia court resolves the pending summary judgment motions, and not through the final resolution of the case in that court.

## 2. Defendant Trebilcock's Motion to Dismiss

Having ruled that the prudent path is to stay this action for the time being, the court need not address defendant Trebilcock's motion to dismiss Count II of plaintiff's amended complaint. Accordingly, the court defers ruling on said motion until such time as the stay is lifted.

## Conclusion

For the reasons set forth herein, the court grants in part the motions to stay the case filed by defendant Robert Trebilcock (document 6) and the Landsburg defendants (document 8). The motion to stay filed by the ABC defendants (document 15) is granted in full. The action is stayed pending the outcome of the motion to transfer filed in Foretich v. American Broadcasting Cos., Inc., et al, Nos. 93-2620, 94-0037 (consol.) (HHG/PJA) (D.D.C.). Should the motion to transfer be denied by the United

---

plaintiff from pursuing his claims against the ABC defendants in another forum. See RESTATEMENT (SECOND) OF TORTS, supra § 577A, cmt. f.

13

States District Court for the District of Columbia, the stay as to the Landsburg defendants and Trebilcock will continue up to the point when said court resolves all summary judgment motions now pending in <u>Foretich v. American Broadcasting Cos., Inc., et al</u>, Nos. 93-2620, 94-0037. As for the ABC defendants, however, the stay will continue through to final resolution of the case in the District of Columbia court. Finally, the court respectfully passes on ruling on defendant Trebilcock's motion to dismiss Count II of plaintiff's amended complaint (document 7) until such time as the stay is lifted and the case is revitalized.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 29, 1996

cc: Richard E. Jordan, Esq.
    Wilbur A. Glahn III, Esq.
    William L. Chapman, Esq.
    Paul R. Taskier, Esq.

14